UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

RAPID MODELS & PROTOTYPES,
INC., et al.,                                    Civil No. 14-277 (NLH/KMW)

       Plaintiffs,

v.                                               **OPINION**

INNOVATED SOLUTIONS, et al.,

       Defendants.

_____

**APPEARANCES:**

Stephen J. Buividas, Esquire
1060 Kings Highway North
Suite 301
Cherry Hill, New Jersey 08034

    *Counsel for Plaintiffs*

Stephen S. Lippman, Esquire
289 Alpine Circle
River Vale, New Jersey 07675

    *Counsel for Defendant Innovated Solutions, LLC*

Kenneth Kaufmann Lehn, Esquire
Winne, Banta, Hetherington,
  Basralian & Kahn, P.C.
Court Plaza South - East Wing
25 Main Street
P.O. Box 647
Hackensack, New Jersey 07602

    *Counsel for Defendant 3D Systems Corporation*

1

**HILLMAN, District Judge**

This matter comes before the Court upon motion [Doc. No. 24] of Defendant 3D Systems Corporation (hereafter, "3D Systems"), and by separate motion [Doc. No. 25] of Defendant Innovated Solutions, LLC[1] for dismissal of the amended complaint under Federal Rule of Civil Procedure 12(b)(6).  The Court has considered the submissions of the parties and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons that follow, Defendant 3D Systems' motion to dismiss is granted.  Defendant Innovated Solutions' motion is granted in part and denied in part.

I.   **JURISDICTION**

The Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the complaint seeks damages in excess of $75,000 and the controversy is between citizens of different states.

---

[1] The caption of the amended complaint names "Innovated Solutions" and "AreteIRC, LLC" as separate parties, but the text of the pleading states that "defendants Innovated Solutions, LLC . . . and AreteIRC, LLC . . . are currently one and the same entity." (Am. Compl. ¶ 3.)  Defendant 3D Systems previously submitted the Declaration of Eric Wonderling, the CEO of Innovated Solutions, LLC, which confirms that "Innovated Solutions" and "AreteIRC LLP," the entities named in the complaint, "are in fact a single company" and the correct name is "Innovated Solutions, LLC." (Decl. of Eric Wonderling ¶ 3, [Doc. No. 8-1].)  The Court shall therefore refer to both defendants as "Innovated Solutions" throughout this Opinion.

II.   **BACKGROUND**

On August 2, 2013, Plaintiffs, Rapid Models & Prototypes, Inc. (hereafter, "RMP"), Joseph Pizzo and Angela Pizzo, filed a civil action in the Superior Court of New Jersey, Law Division, Camden County.  Defendant 3D Systems removed the action to this Court based upon diversity of citizenship.  (Not. of Removal ¶ 2 [Doc. No. 1].)  Defendants 3D Solutions and Innovated Solutions thereafter filed motions to dismiss the complaint.  In response, Plaintiffs filed an amended complaint [Doc. No. 22], thereby mooting the motions to dismiss.  Defendants contend that Plaintiffs' amendments did not cure the deficiencies identified in their first motion to dismiss, and consequently they filed the motions to dismiss presently before the Court.

According to the allegations in the amended complaint, 3D Systems manufactures a three-dimensional printer, called the Projet SD 3000 3D Printer with Projet Accelerator Software and Projet Finisher (hereafter, the "machine"), which is purportedly capable of "taking formless raw materials and molding them into specific mass-produced items which could then be sold as finished products or utilized in the creation of other products or materials."  (Am. Compl. ¶¶ 8, 9.)  In or about May of 2011, Plaintiff RMP entered into an equipment lease for the machine with U.S. Bancorp Manifest Funding Services (hereafter,

3

"Bancorp"). (Id. ¶ 8.)  The lease provided that the machine and related materials were to be supplied by Defendant Innovated Solutions. (Id.)

Pursuant to the lease, Plaintiff RMP was obligated to make sixty monthly payments of $1350.44, plus taxes, and at the end of the lease term was entitled to purchase the machine for a nominal sum. (Id.)[2] Plaintiffs contend that the lease agreement was "merely a financing vehicle" and was "in reality, a sales contract pursuant to which defendant Innovat[ed] agreed to transfer the machine from defendant Innovat[ed] to plaintiff RMP[.]" (Id.)  Innovated Solutions is allegedly an "officially authorized reselling agent" for 3D Systems. (Id. ¶ 9.)

Plaintiffs allege that Innovated Solutions was aware that RMP intended to use the machine to perform specific tasks that were critical to RMP's business, and that a properly functioning machine was an essential component of the operation of RMP's business. (Id. ¶ 10.)  Plaintiffs also allege that 3D Systems knew or should have known when manufacturing the machine that it would be put to a specific use in the manner intended by RMP. (Id.)  Further, Plaintiffs allege that the machine was sold

---

[2] The individual plaintiffs allegedly signed a continuing guaranty by which they became obligated to perform certain duties under the lease, including payment of the monthly rental amount. (Am. Compl. ¶ 12.)

subject to certain warranties by the defendants, including an express warranty by 3D Systems.  (Id. ¶ 11.)

Plaintiffs aver that RMP discovered "[a]lmost immediately" after acquiring the machine that it was defective in that it did not perform the functions it was designed to perform and for which it had allegedly been acquired.  (Id. ¶ 14.)  Plaintiffs specifically state that the machine and its parts were "substandard," and the defects included malfunctioning electronic chips, rejected cartridges, a defective solenoid lock mechanism, and unreliable circuitry.  (Id.)  These alleged malfunctions and inadequacies caused product defects and customer complaints, which purportedly resulted in delay, lost production time, costly replacement, a repeated inability to meet delivery schedules and, ultimately, a loss of RMP's customers.  (Id.)  Although Plaintiffs allegedly notified Innovated Solutions of the ineffectiveness of the machine and requested immediate repairs and adjustments, neither Innovated Solutions nor 3D Systems could rectify the defects so that the machine could be put to effective use.  (Id. ¶ 15.)  Plaintiffs assert that as a result of RMP's inability to utilize the machine, RMP has lost present and existing customers, as well as future business prospects.  (Id. ¶ 16.)

Plaintiffs thus instituted the present civil action in which they assert a number of claims against each of the

defendants.  Plaintiffs assert a claim for breach of contract against Innovated Solutions only (Count I).  Further, Plaintiffs assert against both defendants claims for breach of the implied warranty of merchantability (Counts II and V), breach of the implied warranty of fitness (Counts III and VI), breach of the implied warranty of fitness for a particular purpose (Counts IV and VII), breach of express warranty (Count VIII), fraud (Count IX), negligent misrepresentation (Count X), and violation of the New Jersey Consumer Fraud Act (Count XI).

Defendants seek dismissal of the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants also seek dismissal of the claims for fraud, negligent misrepresentation and violation of the New Jersey Consumer Fraud Act for failure to meet the heightened specificity requirement under Federal Rule of Civil Procedure 9(b).

## III.  <u>STANDARD FOR MOTIONS TO DISMISS</u>

In considering whether Plaintiffs' amended complaint fails to state a claim, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005); <u>see also</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a

6

motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . .
. required to accept as true all factual allegations in the
complaint and draw all inferences from the facts alleged in the
light most favorable to" the plaintiff).  A pleading is
sufficient if it contains "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the
claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8,
127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting Scheuer v.
Rhoades, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90
(1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S.
Ct. 1937, 173 L. Ed. 2d 868 (2009) ("Our decision in Twombly
expounded the pleading standard for 'all civil actions[.]'")
(citation omitted).

Under the Twombly/Iqbal standard, a district court first
"must accept all of the complaint's well-pleaded facts as true,
but may disregard any legal conclusions."  Fowler v. UPMC
Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal,
556 U.S. at 678, 129 S. Ct. 1937).  Second, a district court
"must then determine whether the facts alleged in the complaint
are sufficient to show that the plaintiff has a 'plausible claim

for relief.'" Fowler, 578 F.3d at 211 (citing Iqbal, 556 U.S. at 679, 129 S. Ct. 1937).  "[A] complaint must do more than allege the plaintiff's entitlement to relief." Fowler, 578 F.3d at 211; see also Phillips, 515 F.3d at 234 ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).  "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

Finally, a court in reviewing a Rule 12(b)(6) motion must consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of public record. Guidotti v. Legal Helpers Debt Resolution, 716 F.3d 764, 772 (3d Cir. 2013).  A court may also consider "'undisputedly authentic documents if the complainant's claims are based upon these documents[.]'" Id. (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those

matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(d).

As noted above, Defendants contend that Plaintiffs' claims for fraud, negligent misrepresentation and a violation of the New Jersey Consumer Fraud Act must be pleaded with heightened particularity.  For claims of fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a).  Specifically, it requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally."  Id.  This heightened pleading standard requires a plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (internal citation omitted).

"The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges."  Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998).  Thus, to satisfy this heightened standard, "the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of

9

substantiation into a fraud allegation." <u>Frederico</u>, 507 F.3d at

200.  "Plaintiffs also must allege who made a misrepresentation

to whom and the general content of the misrepresentation." <u>Lum</u>

<u>v. Bank of Am.</u>, 361 F.3d 217, 224 (3d Cir. 2004) (internal

citation omitted), <u>abrogated on other grounds by</u> <u>Twombly</u>, 550

U.S. at 561-63, 127 S. Ct. 1955.

## IV.  <u>DISCUSSION</u>

### A.  Choice of Law Principles

Since the claims in this case are based on state law, at

the outset the Court must determine which law to apply to each

claim.  None of the parties addressed the choice of law issue in

their briefs, and all parties cited only New Jersey law in

connection with the pending motions to dismiss.  The Court, by

Order dated November 20, 2014, required the parties to submit

supplemental briefing on the choice of law issue.  In the Order,

the Court noted that South Carolina, Pennsylvania and New Jersey

have an interest in this matter since the parties are citizens

of these states.  (<u>See</u> Order [Doc. No. 32] 1-2.)

In diversity cases, federal courts apply the forum state's

choice of law rules to determine which state's substantive laws

are controlling.  <u>Maniscalo v. Brother Int'l (USA) Corp.</u>, 709

F.3d 202, 206 (3d Cir. 2013)(citing <u>Klaxon Co. v. Stentor Elec.</u>

<u>Mfg. Co., Inc.</u>, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed.

1477 (1941)).   In conducting the choice of law analysis, New Jersey employs the "most significant relationship" test of the Restatement (Second) of Conflict of Laws.   P.V. v. Camp Jaycee, 197 N.J. 132, 155, 962 A.2d 453 (2008) ("In balancing the relevant elements of the most significant relationship test, we seek to apply the law of the state that has the strongest connection to the case.").   This analysis, which must be performed on an issue-by-issue basis, consists of two steps. First, the Court must determine whether an actual conflict exists between New Jersey law and the law of a competing state. Snyder v. Farnam Cos., Inc., 792 F. Supp. 2d 712, 717 (D.N.J. 2011).   If no conflict exists, then the Court applies the law of the forum state.   Id.   Second, if an actual conflict exists, the Court must determine which state has the most significant relationship to the claim.   Id.   In making this determination, the Court must weigh the factors set forth in the Restatement that correspond to the plaintiff's cause of action.   Id.

In response to the Court's Order, Defendants argue that New Jersey law applies because the parties implicitly agreed that Plaintiffs' claims are subject to New Jersey law.  (Def. 3D Systems Corporation's Supp. Br. Regarding Choice of Law

11

(hereafter, "Def. 3D System's Supp. Br.") 1.)[3]  Plaintiffs, in response, argue that they never conceded that New Jersey law applies to their claims, having cited New Jersey law only because they initially filed their complaint in New Jersey Superior Court and because New Jersey law was the only law cited by Defendants in connection with the motion to dismiss.  (Pls.' Supp. Br. Regarding Choice of Law (hereafter, "Pls.' Supp. Br.") 1.)  3D Systems filed a reply brief, with leave of Court, in which it argues that because Plaintiffs initially filed the case in New Jersey state court, New Jersey law must be applied to this case.  (Def. 3D Systems Corp.'s Reply Br. Regarding Choice of Law 1.)  The Court rejects this argument.  See, e.g., O'Boyle v. Braverman, 337 F. App'x 162 (3d Cir. 2009) (after case was removed from New Jersey state court, district court properly conducted choice of law analysis and concluded that Tennessee law applied to case), cert. denied, 558 U.S. 1112, 130 S. Ct. 1058, 175 L. Ed. 2d 884 (2010); Ciecka v. Rosen, 908 F. Supp. 2d 545, 553, 556 (D.N.J. 2012) (although case was removed from New Jersey state court, district court conducted choice of law analysis and concluded that Pennsylvania had most significant relationship with case).

---

[3] Defendant Innovated Solutions did not file a separate brief but relied on the brief filed by Defendant 3D Systems.  (See Filing Pursuant to R. 7.1(d)(4) [Doc. No. 35].)

Defendants also argued that under the "most significant relationship test," New Jersey law would govern all of the claims in this case.  (Def. 3D System's Supp. Br. 6-12.)  In its analysis, Defendant 3D Systems did not address whether there is an actual conflict of laws with respect to each claim.  (Id. at 5-6.)  Instead, Defendant 3D Systems considered only the second prong and concluded that New Jersey has the most significant relationship to each claim given analysis of the factors set forth in the Restatement (Second) of Conflict of Laws.  (Id. at 12.)

Plaintiffs argue that it is premature for the Court to resolve the choice of law issue at this early stage of litigation.  The Court notes that "'it can be inappropriate or impossible for a court to conduct [a choice of law] analysis at the motion to dismiss stage when little or no discovery has taken place.'"  Snyder, 792 F. Supp. 2d at 718 (quoting In re Samsung DLP Television Class Action Litig., Civ. No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009)).  However, as noted in Snyder, "'[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss.'"  Id. (quoting Harper v. LG Elecs. USA, Inc., 595 F. Supp. 2d 486, 491 (D.N.J. 2009)).  The Court should make a threshold inquiry into whether a choice of law analysis is appropriate at the motion to dismiss stage, by determining

13

whether the choice of law issues require a full factual record or not.  Id.  The factual record may be sufficient for certain choice of law determinations but not others.  See id.  As such, the Court will conduct a threshold choice of law analysis for each issue, and determine whether additional discovery is necessary to conclude the analysis.

### B.   Count VIII -- Breach of Express Warranty

In Count VIII, Plaintiffs aver that Defendants promised that the machine would "perform the operations and functions of similar machines, would be reliable, and would be promptly and effectively repaired in the event that it failed to perform as indicated[.]"  (Am. Compl. ¶ 52.)  In addition, Defendants purportedly "stated specifically that the machine would be free from defects in materials and workmanship when used under normal conditions as described by 3D."  (Id.)  These promises were allegedly "contained in brochures, videos, advertisements and promotional materials, and writings and memoranda of various types, all of which were disseminated to the public, and were also communicated to plaintiff RMP directly by principals and employees of defendants, including, but not limited to, Eric Wonderling."  (Id. ¶ 53.)

In support of their motions to dismiss, Defendants rely upon the Warranty attached to the Declaration of John Calhoun, the Senior Director of Sales, Americans for 3D Systems

(hereafter, the "Warranty").  (Mem. of Law in Supp. of Def. 3D Systems Corp.'s Mot. to Dismiss 9-10; Mem. of Law in Supp. of Def. Innovated Solutions, LLC's Mot. to Dismiss (hereafter, "Def. Innovated Solutions' Br.") 9-10.)  Plaintiffs argue that the Court should not consider the Warranty because it is extraneous to the pleadings.  (Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss (hereafter, "Pl.'s Opp. Br.") 9-10.)  Moreover, Plaintiffs assert that their express warranty claim is based on various sources including 3D System's website and written materials which accompanied the machine.  (Id. at 11.)  Plaintiffs concede that the language in the Warranty "is one of various sources for the express warranty language which is the basis for plaintiffs' claim[.]"  (Id.)  Plaintiffs insist, however, that the Warranty attached to the Calhoun Declaration is not the warranty upon which their claims are based.  (Id.)

As noted above, the Court may consider a document that is "integral to or explicitly relied upon" in the complaint, without converting the motion into a motion for summary judgment.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  The purpose of this rule is assure that the court, when examining a claim based on an isolated statement in a document, can consider the full context of the document and not just the excerpt contained in the plaintiff's complaint.  See id.  The Third Circuit has noted that

"Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." Id.[4]

In this case, Plaintiffs do not dispute the authenticity of the Warranty.  Plaintiffs argue that their claim is not based on this document, even though they concede that it contains the same language as the warranty upon which their claim relies. The Court notes Plaintiffs' assertion that the "same warranty language was available, for example, on 3D's website, and in written materials which accompanied the machine."  (Pl.'s Opp.

---

[4] Plaintiffs contend that In re Burlington Coat Factory and the case upon which it relies, Shaw v. Digital Equip. Corp., 82 F.3d 1194 (1st Cir. 1996), are inapposite because they are limited to claims for fraud.  (Pls.' Opp. Br. 9-11.)  The Court finds that the rationale of In re Burlington is applicable to Plaintiffs' warranty claims in this case.  Indeed, other courts in this district have applied the rationale of In re Burlington when considering on a motion to dismiss extraneous documents containing warranty provisions.  See, e.g., Fishman v. Gen. Elec. Co., No. 2:12-CV-00585, 2014 WL 1628369, at *5 n.5 (D.N.J. Apr. 23, 2014) ("Because Plaintiffs have relied on portions of the Owner's Manuals in the Second Amended Complaint, and because the warranty is integral to their claims, the Court may consider the Owner's Manuals on a motion to dismiss."); Morris v. BMW of N. Am., LLC, Civil Action No. 13-4980, 2014 WL 793550, at *9 (D.N.J. Feb. 26, 2014) (court considered copy of relevant warranty submitted by defendant in connection with motion to dismiss, noting that "Plaintiff does not dispute its authenticity and the Warranty is not only referenced in, but is, in fact, integral to Plaintiff's Amended Complaint as a whole."); Wiseberg v. Toyota Motor Corp., Civil Action No. 11-3776, 2012 WL 1108542, at *7 n.4 (D.N.J. Mar. 30, 2012) ("[A]s Toyota's Basic Warranty is integral to the Complaint and its authenticity is not in dispute, the Court will consider it herein.").

Br. 11.)  The Court also notes Mr. Calhoun's assertion that the
Warranty attached to his Declaration was "provided to 3D
Systems's re-sellers such as Innovated Solutions" and was also
"publicly available on the 3D Systems website, to which
consumers were directed."  (Decl. of John Calhoun ¶ 4.)
Plaintiffs nonetheless insist that the Warranty is not the
source of their express warranty claim.

    The Court finds at this time that the Amended Complaint
fails to satisfy the pleading requirements of Federal Rule of
Civil Procedure 8 insofar as Plaintiffs attempt to allege a
claim for breach of express warranty.  The Court recognizes that
Federal Rule of Civil Procedure 8(a)(2) requires a party to
assert only a "short and plain statement of the claim showing
that the pleader is entitled to relief" so as to give the
defendant "fair notice of what the . . . claim is and the
grounds upon which it rests."  Twombly, 550 U.S. at 554, 127 S.
Ct. 1955.  Plaintiffs must, however, assert enough factual
allegations that "raise a right to relief above the speculative
level[.]"  Id.

    Here, Plaintiffs' express warranty claim is based on an
unspecified warranty that was purportedly "contained in
brochures, videos, advertisements, and promotional materials,"
as well as "writings and memoranda of various types[.]"  (Am.

17

Compl. ¶ 53.)[5]  Plaintiffs do not directly quote the warranty in their amended complaint, did not attach a copy of the warranty to their pleadings, and did not identify with any specificity the source of their warranty claim.  Even now, when faced with the Warranty attached to the Calhoun Declaration, Plaintiffs do not provide a different version of a warranty.  Based on the allegations in the amended complaint, Defendant 3D Systems identified a document that it believes forms the basis of Plaintiffs' claim.  Plaintiffs vehemently dispute that this document is the warranty at issue in this case, yet at no point have they provided any additional facts to apprise Defendants or the Court of the source for their express warranty claim. Defendants cannot defend against a claim for breach of an express warranty when Plaintiffs do not provide facts sufficient to identify the warranty that was allegedly breached.

_____

[5] Based on this allegation, it appears the express warranty claim in this case is predicated upon a written warranty, yet Plaintiffs have not provided any such documents to the Court or identified the documents with any precision such that Defendants understand the source of the express warranty claim.  The Court notes Plaintiffs' assertion in their supplemental brief concerning choice of law that they "need to determine the source of the video presentations and promotional materials which are the source of the warranties and representations made[.]" (Pls.' Supp. Br. 8.)  It is unclear why Plaintiffs do not have a copy the written warranty, when they allege in the amended complaint that they were aware of the existence of the warranties, that the warranties were contained in numerous documents, and that they relied on the representations in the documents in deciding to purchase the machine.  (See, e.g., Am. Compl. ¶¶ 11, 53, 59, 62.)

18

Consequently, the Court concludes that Plaintiffs fail to set forth sufficient factual allegations to raise a right to relief above the speculative level with respect to their express warranty claim.  Defendants' motions to dismiss are granted with respect to the claim in Count VIII for breach of express warranty, and this claim will be dismissed without prejudice.

**C.   Counts II through VII -- Breach of Implied Warranties**

In Counts II through VII, Plaintiffs assert a number of claims for breach of implied warranties, including the implied warranty of fitness, the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose. Defendants argue that these claims are subject to dismissal because they disclaimed all implied warranties in the Warranty attached to the Calhoun Declaration.

**1.   Choice of Law**

The Court at this time does not undertake a full choice of law analysis, because the law of all three interested states permits a party to disclaim implied warranties in a written warranty.  See, e.g., N.J. Stat. Ann. § 12A:2-316(2); S.C. Code Ann. § 36-2-316(2); 13 Pa. Cons. Stat. Ann. § 2316.  Each of these statutes permits a party to "exclude or modify the implied warranty of merchantability" by mentioning merchantability in a conspicuous writing.  Similarly, all three statutes permit a

party to exclude all implied warranties of fitness through a writing with a conspicuous disclaimer.

The Court also notes that a federal law, the Magnuson-Moss Act, sets forth certain requirements for disclaimers.  15 U.S.C. § 2308(a) ("No supplier may disclaim or modify (except as provided in subsection (b) of this section) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product."). "[W]here consumer products are involved this provision obviously conflicts with the UCC provisions on warranty disclaimer and prevails over the UCC and over any other State laws which do not afford consumers greater rights[.]" Gen. Motors Acceptance Corp. v. Jankowitz, 216 N.J. Super. 313, 523 A.2d 695 (N.J. Super. Ct. App. Div. 1987).  Therefore, to the extent a disclaimer is covered by the Magnuson-Moss Act, federal law would apply and no choice of law analysis would be necessary.

## 2.   Analysis

As noted above, while Defendants attempt to rely on the disclaimer contained in the Warranty, Plaintiffs argue that this document is not the source of their express warranty claim.  The Court, therefore, cannot consider the Warranty or the disclaimer

set forth therein in deciding the present motions to dismiss. Defendants' motions to dismiss are consequently denied without prejudice.  Once Plaintiffs file a revised pleading that contains sufficient detail for the parties and the Court to ascertain the source of their express warranty claim, Defendants may file a renewed motion to dismiss if they believe they have a basis to assert that the implied warranties of fitness, fitness for a particular purpose, and merchantability were properly disclaimed, under state and federal law, in the express warranty.[6]

### D.   Count IX -- Fraud

In Count IX, Plaintiffs assert a fraud claim based on allegations that Defendants made misrepresentations about the quality and effectiveness of the machine and its parts. Plaintiffs aver that Defendants made these misrepresentations to induce reliance on the part of Plaintiffs, and that Plaintiff RMP never would have acquired the machine but for Defendants' alleged misrepresentations.  (Am. Compl. ¶¶ 61-63.)

---

[6] Any such motion should fully address the choice of law issues in this case.  In the supplemental briefs requested by the Court, none of the parties addressed the first prong of the "most substantial relationship" test and only addressed the factors in the Restatement (Second) of Conflict of Laws.  The Court need not consider the Restatement factors if there is not an actual conflict between each interested state's laws.

### 1.   Choice of Law

The statute of limitations for bringing a fraud claim differs in all three states.  In New Jersey, a six-year statute of limitations applies to fraud claims.  N.J. Stat. Ann. § 2A:14-1.  The time period to bring an action for common law fraud in Pennsylvania is two years.  42 Pa. Cons. Stat. Ann. § 5524.  The statute of limitations for a fraud claim in South Carolina is three years.  S.C. Code Ann. § 15-3-530.

In this case, Plaintiffs filed their complaint on August 2, 2013.  Although the amended complaint lacks specificity as to the dates of the conduct at issue in this case, which supports dismissal under Federal Rule of Civil Procedure 9(b), the Court notes that in the amended complaint Plaintiffs aver that Plaintiff RMP entered into a lease agreement in or about May of 2011 by which it became entitled to the use and possession of the machine, and that the machine did not perform as promised "[a]lmost immediately" after it was acquired.  (Am. Compl. ¶¶ 8, 14.)  It therefore appears that Plaintiffs discovered that the machine was defective in or about May 2011.  As such, under Pennsylvania's statute of limitations, their claim for fraud would be barred because the complaint was not filed until August 2013.  By contrast, the complaint would be deemed timely filed if South Carolina or New Jersey law applies to Plaintiffs' fraud claim.

Therefore, there is a conflict between the application of New Jersey's, Pennsylvania's and South Carolina's statutes of limitations to this case, and the Court must determine which one to apply.  The Court thus must proceed to the second prong of the "most significant relationship" test.  As applied to common law fraud claims, the Court considers the factors set forth in Section 148 of the Restatement (Second) of Conflict of Laws. Section 148 has two subsections: Section 148(1) applies when the defendant made the fraudulent representations in the same state in which the consumer relied on the representations, whereas Section 148(2) governs when the misrepresentations and the reliance occurred in different states.  See Restatement (Second) of Conflict of Laws § 148.

Defendant 3D Systems argues that Section 148(1) applies because any representations were made to Plaintiffs in New Jersey and Plaintiffs acted on the alleged misrepresentations in New Jersey.  (Def. 3D System's Supp. Br. 9.)  Plaintiffs contend that it is premature to determine the choice of law issue in connection with this claim.  (Pls.' Supp. Br. 8.)

The Court will follow the Third Circuit and other courts in this District in concluding that the alleged representations were made at Defendants' headquarters, and not in Plaintiffs' home state.  See, e.g., Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 255 (3d Cir. 2010); Spera v. Samsung Elecs. Am.,

23

<u>Inc.</u>, No. Civ. A. 2:12-cv-05412, 2014 WL 1334256, at *4 (D.N.J. Apr. 2, 2014); <u>Feldman v. Mercedes-Benz USA, LLC</u>, Civ. No. 2:11-cv-00984, 2012 WL 6596830, at *6 (D.N.J. Dec. 18, 2012).  Thus, this case is governed by subsection (2), under which the following contacts must be weighed:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws, § 148(2).

Accepting Plaintiffs' allegations as true, the Court finds the following for purposes of the choice-of-law analysis: Plaintiffs are residents of New Jersey and received representations in New Jersey; the machine was delivered to Plaintiffs in New Jersey; the place where 3D Systems made the representations was South Carolina, and the place where

Innovated Solutions made the representations was Pennsylvania, which are the places of business of these entities; and Plaintiffs were to render performance in New Jersey.  Four of the six factors clearly weigh in favor of applying New Jersey law and, as such, the Court finds that the Section 148(2) factors weigh in favor of applying the law of Plaintiffs' home state, New Jersey.

### 2.  Analysis

In New Jersey, the five elements of common law fraud are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  See, e.g., Panella v. O'Brien, No. 05-1790, 2006 WL 2466858, *8 (D.N.J. Aug. 24, 2006).

Under Rule 9(b), as set forth above, a plaintiff must allege in connection with a fraud claim the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.  Frederico, 507 F.3d at 200.  A plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation.  Lum, 361 F.3d at 224.

Plaintiffs concede that their complaint lacks detail.  They assert that they intend to identify in discovery the individuals

25

responsible for the representations made.  (Pls.' Supp. Br. 7.)
The problem with Plaintiffs' argument is that the facts upon
which their fraud claim is based should already be known to
Plaintiffs.  They should be able to identify with some
particularity, for example, what written materials contained
misrepresentations, as Plaintiffs allege that they relied on the
representations contained therein and they therefore have
knowledge of what written documents they reviewed in deciding to
acquire the machine over other printers.  For the same reason,
Plaintiffs should be able to identify with specificity the dates
and places on which they received such written materials.
Moreover, because Plaintiffs allege that oral representations
were made by both defendants directly to Plaintiff RMP,
Plaintiff RMP should be able to identify with whom it spoke and
the dates on which such representations were made.[7]

---

[7] As an initial matter, because RMP is a corporation, it could
only have communicated with Defendants through a natural person,
but the amended complaint does not allege the person to whom the
misrepresentations were made.  Additionally, the only individual
identified in the complaint who made the alleged
misrepresentations is Eric Wonderling, an employee of Defendant
Innovated Solutions, but there are no factual allegations to
conclude that Mr. Wonderling's actions are attributable to
Defendant 3D Solutions.  Plaintiffs allege only that they "are
informed and believe, and based upon said information and belief
allege, that defendant Innovated and Eric Wonderling, its
employee, acted as officially authorized reselling agents for
defendant 3D."  (Am. Compl. ¶ 9.)  Under Rule 9(b), allegations
"based upon information and belief" are permissible, but only if
the pleading sets forth specific facts upon which the belief is
reasonably based.  In re Burlington Sec. Litig., 114 F.3d at

Moreover, Plaintiffs do not provide details concerning the "who, what, when, where, and how" or otherwise provide factual detail.  The only time frame asserted in the amended complaint is that Plaintiff RMP entered into a lease agreement for the machine in or about May of 2011.  (Am. Compl. ¶ 8.)  Plaintiffs then state that "prior to and contemporaneous with the acquisition of the machine," certain misrepresentations were made, yet there is no further delineation of when such statements were made.  (Id. ¶ 58.)  Plaintiffs have not indicated the specific portion of any document that they claim constitutes a misrepresentation, nor have they quoted from any of the written materials so as to put Defendants on notice of which documents purportedly contain misrepresentations.  The Court also notes Plaintiffs' failure to allege in the amended complaint that Defendants knew that the representations

---

1418.  Again, Plaintiffs have set forth no facts to support their conclusion that Mr. Wonderling is authorized to act as an agent on behalf of Defendant 3D Systems.  As such, Plaintiffs' collectivized allegations that "Defendants" engaged in wrongful conduct, without specifying the nature of each defendant's alleged participation in the fraud, fails to satisfy the heightened pleading requirements of Rule 9(b).  See MDNet, Inc. v. Pharmacia Corp., 147 F. App'x 239, 245 (3d Cir. 2005)(with multiple defendants "the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant.").  A fraud claim will be dismissed where a "Plaintiff lumps all [defendants] together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions." Snyder v. Dietz & Watson, Inc., 837 F. Supp. 2d 428, 450 (D.N.J. 2011).

27

contained in their written materials or verbal communications were false, a required element for a fraud claim under New Jersey law.

Based on these pleading failures, Count IX will be dismissed without prejudice.

### E.    Count X -- Negligent Misrepresentation

In Count X, Plaintiffs assert a claim for negligent misrepresentation, averring therein that Defendants made various misrepresentations regarding the quality of the machine and its parts and components and that such misrepresentations were made to induce reliance by Plaintiff RMP.  (Am. Compl. ¶¶ 70-73.) Plaintiffs contend that they would not have acquired the machine but for the alleged misrepresentations but instead would have "attempted to place in operation another machine or equipment of similar type or effect." (Id. ¶ 74.) Defendants argue that Plaintiffs failed to plead this claim with the requisite specificity under Rule 9(b) of the Federal Rules of Civil Procedure. (Def. 3D Systems' Br. 17-19; Def. Innovated Solutions' Br. 17-20.)  Defendants also argue that this claim is barred by New Jersey's economic loss doctrine.  (Def. 3D Systems' Br. 28-32; Def. Innovated Solutions' Br. 28-32.)

#### 1.    Choice of Law

The statute of limitations for a negligent misrepresentation claim in Pennsylvania is two years.  42 Pa.

C.S.A. § 5524(7); Albarqawi v. 7-Eleven, Civil Action No. 12-
3506, 2014 WL 616975, at *4 (E.D.Pa. Feb. 18, 2014).  New Jersey
applies a six-year statute of limitations to negligent
misrepresentation claims.  N.J. Stat. Ann. § 2A:14-1; Kronfeld
v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1478 (D.N.J.
1986).  South Carolina's statute of limitations for a negligent
misrepresentation claim is three years.  S.C. Code § 15-3-530(5);
Graham v. Welch, Roberts and Amburn, LLP, 404 S.C. 235, 239, 743
S.E.2d 860 (S.C. Ct. App. 2013).

As with the fraud claim, the choice of law analysis for
Plaintiffs' negligent misrepresentation claim demonstrates that
there is an actual conflict between the laws of New Jersey,
Pennsylvania, and South Carolina.  Each state applies a
different statute of limitations, and Plaintiffs' claim would be
time-barred under the Pennsylvania statute.  The Court therefore
turns to the factors set forth the Restatement (Second) of
Conflict of Laws for claims of negligent misrepresentation,
which are set forth in Section 148.  The Court already analyzed
these factors in connection with the common law fraud claim,
supra, and concluded that it will apply the law of Plaintiffs'
home state, New Jersey.  Thus, New Jersey law will also apply to
Plaintiffs' negligent misrepresentation claim.

## 2.   Analysis

Under New Jersey law, to plead a claim of negligent misrepresentation, a plaintiff must allege "'[a]n incorrect statement, negligently made and justifiably relied upon'" and economic loss sustained as a consequence of that reliance. Green v. Morgan Props., 215 N.J. 431, 457, 73 A.3d 478 (2013) (quoting H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334, 461 A.2d 138 (1983), superseded on other grounds, N.J. Stat. Ann. § 2A:53A-25).

Initially, the Court notes that there is disagreement among the courts in this District regarding the pleading standard that applies to claims of negligent misrepresentation.  Some courts have required plaintiffs to plead negligent misrepresentation in accordance with Federal Rule of Civil Procedure 9(b).  See, e.g., In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, 2:06-cv-5774, 2009 WL 2043604, at *33 (D.N.J. July 10, 2009), Gray v. Bayer Corp., Civ. A. No. 08-4716, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009).  Other courts have declined to apply Rule 9(b) to negligent misrepresentation claims.  See, e.g., Rawson Food Servs., Inc. v. TD Bank, N.A., Civ. A. No. 13-3084, 2014 WL 809210, at *5 (D.N.J. Feb. 28, 2014); Donachy v. Intrawest U.S. Holdings, Inc., Civ. A. No. 10-4038, 2012 WL 869007, at *5 (D.N.J. Mar. 14, 2012); Kirtley v.

Wadekar, Civ. A. No. 05-5383, 2006 WL 2482939, at *2 (D.N.J. Aug. 25, 2006).

The Court need not resolve this issue, however, because the Court finds that Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine, which generally limits recovery for defective goods to remedies provided by the U.C.C.. Defendants raise the economic loss doctrine in their moving briefs, yet Plaintiffs fail to address the argument or demonstrate that their claims are not barred by this doctrine.[8]

In Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985), the New Jersey Supreme Court held that "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence." Id. at 561, 489 A.2d 660. The Court premised this conclusion on the distinction between tort law and

---

[8] Courts in this District have held that the failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed. See Griglak v. CTX Mortgage Co., No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010); Leisure Pass N. Am., LLC v. Leisure Pass Group, Ltd., No. 12-3375, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013) ("Plaintiff has waived its opposition to this argument by failing to respond to it."). Thus, on this basis alone the Court could accept Defendants' argument and dismiss the negligent misrepresentation claim.

contract law, noting that "the purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties[,]" whereas "a contractual duty . . . arises from society's interest in the performance of promises." Id. at 579. The Court concluded that "[a]s among commercial parties in a direct chain of distribution, contract law, expressed here through the U.C.C., provides the more appropriate system for adjudicating disputes arising from frustrated economic expectations." Id. at 580, 489 A.2d 660.

Subsequent to Spring Motors, the New Jersey Supreme Court extended the economic loss doctrine to consumer purchasers as well as commercial purchasers. Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620, 695 A.2d 264 (1997). In Alloway, the Court stated that "a tort cause of action for economic loss duplicating the one provided by the U.C.C. is superfluous and counterproductive." Id. at 641, 695 A.2d 264.[9] The Court explained that the fundamental distinction between permissible and impermissible claims lies in the object of the damage:

---

[9] The court defined economic loss as encompassing "actions for the recovery of damages for costs of repair, replacement of defective goods, inadequate value, and consequential loss of profits" as well as "the diminution of value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Id. at 627, 695 A.2d 264 (quotation omitted).

"[g]enerally speaking, tort principles are better suited to
resolve claims for personal injuries or damage to other
property" while "[c]ontract principles more readily respond to
claims for economic loss caused by damage to the product
itself." See id. at 627, 695 A.2d 264.  The Court also noted
that "[t]he U.C.C. represents the Legislature's attempt to
strike the proper balance in the allocation of the risk of loss
between manufacturers and purchasers for economic loss arising
from injury to a defective product."  Id. at 629, 695 A.2d 264.

Thus, in New Jersey, the U.C.C. provides "the exclusive
remedy for claims of purely economic loss due to a defective
product." Goldson v. Carver Boat Corp., 309 N.J. Super. 384,
395, 707 A.2d 193 (N.J. Super. Ct. App. Div. 1998) ("where the
'harm suffered is to the product itself, unaccompanied by
personal injury or property damage . . . principles of contract,
rather than of tort law, [are] better suited to resolve the
purchaser's claim.'").  Where "there is no substantial disparity
in bargaining power, and the only damage caused by the defective
product is to the product itself, contract law, and the law of
warranty in particular, is best suited to set the metes and
bounds of appropriate remedies." Goldson, 309 N.J. Super. at
397, 707 A.2d 193.

In this case, Plaintiffs seek damages solely relating to
the alleged malfunction of the machine; they do not seek damages

33

for injury to a person or other property.  In this regard,
Plaintiffs allege that they suffered damage in the form of
"repeated delays and lost production time, costly replacement,
and a repeated inability to meet delivery schedules and an
attendant loss of customers."  (Am. Compl. ¶ 14.)  Additionally,
the Court notes that the allegations of the amended complaint
demonstrate the parties had equal bargaining power.  Plaintiffs
aver, for example, that had they known the machine would not
operate as had been represented to them, they would never have
acquired the machine, would not have incurred any of the
expenses connected with its acquisition, and would have
attempted to place in operation another machine or equipment of
similar type or effect.  (<u>Id.</u> ¶ 62.)

     Because Plaintiffs seeks to recover in tort for an
allegedly defective product and their economic consequences, not
for damage to persons or to other property, the Court finds that
Plaintiffs' negligent misrepresentation claim is barred by New
Jersey's economic loss doctrine.  This claim will be dismissed
with prejudice.

**F.   Count XI -- New Jersey Consumer Fraud Act**

Plaintiffs assert in Count XI a claim for a violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 <u>et seq.</u> (hereafter, "NJCFA").  This claim is based on the same alleged misrepresentations discussed previously in connection with Plaintiffs' common law fraud claim.  (<u>See</u> Am. Compl. ¶¶ 80-81.)

**1.   Choice of Law**[10]

The NJCFA is one of the strongest in the country and "may 'actually conflict' with those of other states for a panoply of reasons, including the fact that it 'encourages private class actions for consumer fraud' while other statutes forbid them; it allows actions related to commercial purposes while other statutes limit actions to 'personal, family or household purposes'; and it allows for treble damages, which other

---

[10] The parties have not addressed whether statutory claims, like common law claims, are subject to a choice-of-law analysis. Courts have held that choice of law principles apply equally to common law and statutory claims, and we do so here.  <u>See, e.g.</u>, <u>In re Simon II Litigation</u>, 211 F.R.D. 86, 166 (E.D.N.Y. 2002)(Weinstein, S.D.J.) ("Choice of law rules apply equally to claims brought under common law and statutory law."); <u>Curtiss-Wright Corp. v. Rodney Hunt Co., Inc.</u>, 1 F. Supp. 3d 277, 282, 284 (D.N.J. 2014) (where plaintiff asserted common law claims and claim under NJCFA, court conducted choice of law analysis as to both common law and statutory claims); <u>Maniscalco v. Brother Int'l Corp. (USA)</u>, 793 F. Supp. 2d 696 (D.N.J. 2011) (where plaintiff asserted claim under NJCFA, court conducted choice of law analysis, concluded that New Jersey law does not apply, and dismissed NJCFA claim), <u>aff'd</u>, 709 F.3d 202 (3d Cir. 2013).

35

statutes do not." <u>Skeen v. BMW of N. Am., LLC</u>, Civ. No. 2:13-cv-1531, 2014 WL 283628, at *5 (D.N.J. Jan. 24, 2014) (quoting <u>Int'l Union of Oper. Eng'rs Local # 68 Welfare Fund v. Merck & Co., Inc.</u>, 384 N.J. Super. 275, 294-95, 894 A.2d 1136 (N.J. Super. Ct. App. Div. 2006)).

The NJCFA and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereafter, "UTPCPL") are in direct conflict.  Pennsylvania's consumer protection statute requires a plaintiff to prove reliance under its consumer protection statutes, whereas the NJCFA does not place such a stringent burden on a plaintiff.  The NJCFA requires only proof of a causal nexus between the concealment of the material fact and the loss, and a plaintiff need not demonstrate that he relied on the misrepresentation to state a claim under the NJCFA.  <u>Marcus v. BMW of N. Am., LLC</u>, 687 F.3d 583, 606 (3d Cir. 2012); <u>Weinberg v. Sun Co., Inc.</u>, 565 Pa. 612, 618, 777 A.2d 442 (Pa. 2001) (UTPCPL did not "do away with the traditional common law elements of reliance and causation.").

The NJCFA is also in conflict with South Carolina's Uniform Trade Practices Act (hereafter, "UTPA").  The South Carolina statute requires a plaintiff to prove that the defendant's actions adversely affected the public interest by, for example, showing that the defendant's acts or practices have the potential for repetition.  <u>Wright v. Craft</u>, 372 S.C. 1, 29, 640

S.E. 2d 486 (S.C. App. 2006).  The NJCFA, by contrast, has no
public interest impact component.  Spera v. Samsung Elec. Am.,
Inc., Civ. A. No. 2:12-cv-05412, 2014 WL 1334256, at *4 (D.N.J.
Apr. 2, 2014).

     Since there are actual conflicts between the NJCFA and both
the UTPA and the UTPCPL, the Court must proceed to the second
prong of the most significant relationship test.  The Court
considers the factors set forth in Section 148 of the
Restatement (Second) of Conflict of Laws for consumer fraud
claims.  The Court already analyzed these factors in connection
with the common law fraud claim and concluded that they weigh in
favor of application of Plaintiffs' home state, New Jersey.
Therefore, the Court will apply New Jersey law to Plaintiffs'
statutory consumer fraud claim.

          **2.  Analysis**

     The NJCFA provides a cause of action to "[a]ny person who
suffers any ascertainable loss of moneys or property, real or
personal, as a result of the use or employment by another person
of any method, act, or practice declared unlawful under this act
. . . [.]"  N.J. Stat. Ann. § 56:8-19.  To state a cause of
action under the NJCFA, a plaintiff must allege: "(1) an
unlawful practice by the defendants; (2) an ascertainable loss
by plaintiff; and (3) a causal nexus between the first two
elements — defendants' allegedly unlawful behavior and the

37

plaintiff's ascertainable loss." Parker v. Howmedica Osteonics

Corp., No. 07-2400, 2008 WL 141628, *2 (D.N.J. Jan. 14, 2008)

(citation omitted). An "unlawful practice" may be an

affirmative act, a knowing omission, or a regulatory violation.

See id.

Plaintiffs asserting claims under the NJCFA must meet the

heightened pleading standard of Federal Rule of Civil Procedure

9(b). Frederico, 507 F.3d 188, 200 (3d Cir. 2007). Defendants

argue that Plaintiffs' NJCFA claim is devoid of factual support

for the same reasons discussed above in connection with the

fraud claim. The Court agrees. As Plaintiffs' NJCFA claim

merely incorporates the prior paragraphs of the amended

complaint, the same allegations apply to both their fraud claim

and their NJCFA claim. Plaintiffs have not supplemented their

NJCFA claim with additional facts that warrant separate

analysis. For the same reasons that Plaintiffs' fraud claim

lacks sufficient specificity under Rule 9(b), the NJCFA claim

similarly fails to meet the heightened pleading requirement.[11]

---

[11] The Court also notes that the amended complaint fails to set
forth with specificity an "ascertainable loss" as required under
the NJCFA. For example, Plaintiffs aver that because the
printer did not function as intended, it "caused product defects
and customer complaints including, but not limited to, bends,
unacceptable tolerances, and a wax build-up. The aforementioned
defects and malfunctions caused repeated delays and lost
production time, costly replacement, and a repeated inability
to meet delivery schedules and an attendant loss of customers."
(Am. Compl. ¶ 14.) However, Plaintiffs do not identify which

Count XI of the amended complaint will be dismissed without prejudice.

**G.    Count I – Breach of Contract**

Although the claims against Defendants 3D Systems and Innovated Solutions are largely duplicative, the amended complaint contains a count for breach of contract against only Defendant Innovated Solutions.  In moving to dismiss this count, Innovated Solutions argues that this count is based on the Warranty and should be dismissed for the same reasons that the express warranty claim should be dismissed.  (Def. Innovated Solutions' Br. 12.)

The Court finds that Plaintiffs' breach of contract claim is not based on an express warranty, but on an alleged sales contract between Plaintiff RMP and Innovated Solutions.  In the amended complaint, Plaintiffs aver that the lease agreement through Bancorp "was, in reality, a sales contract pursuant to which defendant Innovated agreed to transfer the machine from defendant Innovated to plaintiff RMP."  (Am. Compl. ¶ 8.) Plaintiffs further allege that "defendant Innovated was aware from its conversation with plaintiffs RPM and Joseph Pizzo that

---

customers were lost as a result of the alleged malfunction of the machine, examples of lost production time, or how much money Plaintiffs spent for replacement, and consequently the pleading fails to allege an ascertainable loss with the requisite specificity.

RPM intended to use the machine to perform certain specific tasks which were absolutely critical to RPM in the conduct of its business, and that a properly functioning machine was an essential component of the operation of said business[.]" (<u>Id.</u> ¶ 10.) Plaintiffs then allege that "Defendant Innovat[ed] breached its contract with plaintiffs by, among other things, delivering a non-conforming and defective product[.]" (<u>Id.</u> ¶ 18.)

These allegations demonstrate that Plaintiffs' breach of contract claim is based on a separate agreement with Defendant Innovated Solutions, and is not based on a written warranty. Because Innovated Solutions does not address why the contract claim is subject to dismissal pursuant to Rule 12(b)(6), other than the arguments raised in connection with the express warranty claim, Defendant Innovated Solutions' motion is denied without prejudice.[12]

**V.   <u>CONCLUSION</u>**

For the foregoing reasons, the Court finds that Plaintiffs' amended complaint fails to meet the pleading requirements under Federal Rule of Civil Procedure 12(b)(6) and, to the extent Plaintiffs assert claims for common law fraud and violations of

---

[12] The Court does not conclude that the breach of contract claim meets the pleading standards under <u>Twombly/Iqbal</u>, but finds only that Defendant Innovated Solutions fails to adequately address the issue.

the New Jersey Consumer Fraud Act, Federal Rule of Civil
Procedure 9(b).  Accordingly, the claims in Counts II through
VIII, IX and XI are dismissed, without prejudice to Plaintiffs'
right to file an amended pleading as to these claims.
Additionally, the claim in Count X for negligent
misrepresentation is dismissed, with prejudice, pursuant to the
economic loss doctrine.  The claim for breach of contract in
Count I is not dismissed, but Defendant Innovated Solutions may
raise its arguments in connection with this claim in any amended
complaint that Plaintiffs may file.

   An Order consistent with this Opinion will be entered on
this date.


                              s/ Noel L. Hillman
Dated: December 29, 2014      NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey

41