UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

RAPID MODELS & PROTOTYPES,
INC., et al.,                          Civil No. 14-277 (NLH/KMW)

          Plaintiffs,

v.                                     **OPINION**

INNOVATED SOLUTIONS, et al.,

          Defendants.

_____

**APPEARANCES:**

Stephen J. Buividas, Esquire
1060 Kings Highway North
Suite 301
Cherry Hill, New Jersey 08034

          *Counsel for Plaintiffs*

Stephen S. Lippman, Esquire
289 Alpine Circle
River Vale, New Jersey 07675

          *Counsel for Defendant Innovated Solutions, LLC*

Kenneth Kaufmann Lehn, Esquire
Winne, Banta, Hetherington,
  Basralian & Kahn, P.C.
Court Plaza South - East Wing
25 Main Street
P.O. Box 647
Hackensack, New Jersey 07602

          *Counsel for Defendant 3D Systems Corporation*

1

**HILLMAN, District Judge:**

Presently before the Court is a motion [Doc. No. 45] by Defendant 3D Systems Corporation (hereafter, "3D Systems") seeking to dismiss the Second Amended Complaint filed by Plaintiffs, Rapid Models & Prototypes, Inc. (hereafter, "RMP"), Joseph Pizzo and Angela Pizzo.  Plaintiffs offered no substantive opposition to the motion to dismiss, but instead filed a motion [Doc. No. 50] for leave to file a Third Amended Complaint.  3D Systems opposes the motion for leave to amend the complaint, but Defendant Innovated Solutions, LLC (hereafter, "Innovated Solutions") does not oppose the motion.  The Court has considered the submissions of the parties and decides this matter pursuant to Fed. R. Civ. P. 78.

For the reasons that follow, Plaintiffs' motion for leave to file a Third Amended Complaint will be granted.  The motion to dismiss the Second Amended Complaint will be denied as moot because the Court will allow the filing of the proposed Third Amended Complaint.  The Court, however, has considered 3D Systems' arguments for dismissal of the Second Amended Complaint, as well as its futility arguments raised in opposition to the motion to amend, in connection with the averments in the proposed Third Amended Complaint.  Several claims against 3D Systems in the Third Amended Complaint will be limited or dismissed with prejudice, as set forth below.

2

I. **JURISDICTION**

As noted in the December 29, 2014 Opinion previously issued in this case, subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, as Plaintiffs seek damages in excess of $75,000 and the controversy is between citizens of different states.

II. **BACKGROUND**

The background of this action was set forth at length in the Court's Opinion dated December 29, 2014.  Generally, this case involves a three-dimensional printer, a Projet SD 3000, that was manufactured by 3D Systems and was sold to RMP through Innovated Solutions, an authorized reseller.  Plaintiffs contend that the printer malfunctioned and did not operate in accordance with representations made by Defendants.

Both Innovated Solutions and 3D Systems previously sought dismissal of the amended complaint.  The Court granted 3D Systems' motion to dismiss, and granted in part and denied in part Innovated Solutions' motion to dismiss.  Counts II through IX and Count XI of the amended complaint were dismissed without prejudice, and Count X was dismissed with prejudice.  Plaintiffs were granted thirty days to file a second amended complaint.

On January 28, 2015, Plaintiffs filed a Second Amended Complaint in an effort to cure the deficiencies identified in the Court's December 29, 2014 Opinion.  However, according to 3D Systems, this Second Amended Complaint still fails to state a

3

claim against 3D Systems pursuant to Federal Rule of Civil
Procedure 12(b)(6).  Plaintiffs did not formally oppose the
motion to dismiss, but instead filed a motion seeking leave to
file a Third Amended Complaint.  Plaintiffs' counsel represents
in the motion to amend that he was recently advised that a 3D
Systems' employee, Tuan Tran Pham, played a role in connection
with the transaction at issue in this case.  The proposed Third
Amended Complaint therefore incorporates allegations concerning
Pham's role in the sale of the three-dimensional printer to RMP.
3D Systems opposes the motion to amend on the basis that the
proposed new averments are futile, as Plaintiffs' claims remain
deficient for the reasons set forth in 3D Systems' motion to
dismiss the Second Amended Complaint.  3D Systems also opposes
the motion on the grounds of undue delay.

## III.  <u>STANDARDS FOR DISMISSAL AND AMENDING THE PLEADINGS</u>

### A.   **Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

In considering whether a complaint fails to state a claim,
the Court must accept all well-pleaded allegations in the
complaint as true and view them in a light most favorable to the
plaintiff.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005);
<u>see also</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 228 (3d
Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P.
12(b)(6), [a district court is] . . . required to accept as true

4

all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).  A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).

Under the Twombly/Iqbal standard, a district court first "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678, 129 S. Ct. 1937).  Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (citing Iqbal, 556 U.S. at 679, 129 S. Ct. 1937).  "[A] complaint must do more than

5

allege the plaintiff's entitlement to relief." Fowler, 578 F.3d at 211; see also Phillips, 515 F.3d at 234 ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

Finally, a court in reviewing a Rule 12(b)(6) motion must consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of public record. Guidotti v. Legal Helpers Debt Resolution, 716 F.3d 764, 772 (3d Cir. 2013). A court may also consider "'undisputedly authentic documents if the complainant's claims are based upon these documents[.]'" Id. (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(d).

6

**B.    Standard for Motion to Amend Complaint**

Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989). An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss. Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988).

**IV.  ANALYSIS**

Although 3D Systems initially filed for dismissal of the Second Amended Complaint, it contends that the same arguments also apply to the proposed Third Amended Complaint. In deciding the pending motions, therefore, the Court considers the allegations contained in the proposed Third Amended Complaint.

A.   **Count IX of Proposed Third Amended Complaint --
Breach of Express Warranty**

1.   **Choice of Law Analysis**[1]

As discussed at length in the December 29, 2014 Opinion, in conducting a choice of law analysis, New Jersey employs the "most significant relationship" test of the Restatement (Second) of Conflict of Laws.  P.V. v. Camp Jaycee, 197 N.J. 132, 155, 962 A.2d 453 (N.J. 2008) ("In balancing the relevant elements of the most significant relationship test, we seek to apply the law of the state that has the strongest connection to the case."). This analysis, which must be performed on an issue-by-issue basis, consists of two steps.  First, the Court must determine whether an actual conflict exists between New Jersey law and the law of a competing state.  Snyder v. Farnam Cos., Inc., 792 F. Supp. 2d 712, 717 (D.N.J. 2011).  If no conflict exists, then the Court applies the law of the forum state.  Id.  Second, if an actual conflict exists, the Court must determine which state has the most significant relationship to the claim.  Id.  In

---

[1] In the December 29, 2014 Opinion, the Court thoroughly discussed choice of law principles, although it did not conduct a choice of law analysis with respect to the express warranty claim because the amended complaint did not contain enough facts to even identify the source of the alleged express warranty. The Court specifically directed the parties to fully address choice of law issues if they filed any further motions on the merits.  (Op. [Doc. No. 41] 8 n.1, Dec. 29, 2014.)  Despite the Court's directive, 3D Systems' motion to dismiss contains no choice of law analysis and merely assumes that New Jersey law applies.

making this determination, the Court must weigh the factors set
forth in the Restatement that correspond to the plaintiff's
cause of action.  Id.

In this case, the Court considers whether there is a
conflict between the laws of New Jersey, Pennsylvania, and South
Carolina.  Although all of these states have adopted the Uniform
Commercial Code, "'the law that has emerged thereunder is not
pristinely uniform'" with respect to express warranty claims.
Snyder, 792 F. Supp. 2d at 720 (internal citation omitted).
State laws regarding breach of express warranty often vary as to
whether reliance or privity of contract must be demonstrated to
state such a claim.  Id.  Here, the Court has not found any
conflict between the laws of New Jersey, Pennsylvania and South
Carolina with respect to breach of express warranty claims.
None of these states requires privity[2] or reliance on the
warranty[3], and the Court finds no significant difference in each

---

[2] DiIorio v. Structural Stone & Brick Co., Inc., 368 N.J. Super.
134, 140, 845 A.2d 658 (N.J. Super. Ct. App. Div. 2004) (privity
is not required to bring an express warranty claim under New
Jersey law); Spagnol Enter., Inc. v. Digital Equip. Corp., 390
Pa. Super. 372, 378, 568 A.2d 948 (Pa. Super. Ct. 1989) (privity
of contract is not necessary element in breach of warranty case
under Pennsylvania law); Phillips v. South Carolina State Univ.,
No. 2005-UP-320, 2005 WL 7084045, at *5 (S.C. App. May 12,
2005)(noting that S.C. Code Ann. § 36-2-318, official cmt. 1
(2003) makes clear that statute abolishes privity defense).

[3] Arons v. Rite Aid Corp., No. BER-L-4641-03, 2005 WL 975462, at
*23 (N.J. Super. Ct. Law Div. Mar. 23, 2005) (reliance upon
warranty need not be shown under New Jersey law); Samuel-Bassett

state's law concerning the making of an express warranty.
Accordingly, in the absence of a conflict of law, the Court will
apply New Jersey law to Plaintiffs' claim for breach of express
warranty.

### 2.   Analysis

The elements of a claim for breach of express warranty
under New Jersey law are as follows: "(1) that Defendant made an
affirmation, promise or description about the product; (2) that
this affirmation, promise or description became part of the
basis of the bargain for the product; and (3) that the product
ultimately did not conform to the affirmation, promise or
description."  Snyder, 792 F. Supp. 2d at 721.

In the amended complaint, Plaintiffs' express warranty
claim was based on an unspecified warranty that was purportedly
"contained in brochures, videos, advertisements, and promotional
materials," as well as "writings and memoranda of various
types[.]"  (Am. Compl. ¶ 53.)  Plaintiffs did not directly quote
the warranty in their amended complaint, did not attach a copy
of the warranty to their pleadings, and did not identify with

----

v. Kia Motors Am., Inc., 613 Pa. 371, 412-13, 34 A.3d 1 (Pa.
2011) (reliance on express warranty is not required under
Pennsylvania law); Campus Sweater & Sportswear Co. v. M.B. Kahn
Constr. Co., 515 F. Supp. 64, 96 (D.S.C. 1979) (noting that
under South Carolina statute, no particular reliance need be
shown in express warranty claim, citing S.C. Code Ann. § 36-2-
313, official cmt. 1), aff'd, 644 F.2d 877 (4th Cir. 1981).

any specificity the source of their warranty claim.  The Court concluded that the amended complaint failed to satisfy the pleading requirements of Federal Rule of Civil Procedure 8 because Plaintiffs failed to allege facts sufficient to identify the warranty that was allegedly breached.  The express warranty claim was therefore dismissed without prejudice.

In the proposed Third Amended Complaint, Plaintiffs now identify, quote from, and attach copies of several documents that purportedly provide the sources for their express warranty claim.  Specifically, Plaintiffs aver that the express warranties that support their claims are contained in the following documents: (1) "3D Systems, Inc. Standard Terms and Conditions, Effective August 3, 2009," which is contained on 3D Systems' website; (2) "3D Systems Corporation Projet 5000/3000 Warranty Effective on Systems Sold Starting December 1, 2009;" (3) a 3D brochure that is disseminated online as part of 3D Systems' promotional materials; (4) a "Manufacturer's Description" contained in on-line promotional materials; (5) a YouTube video presentation by 3D Systems; and (6) representations made by Eric Wonderling, a principal of

Innovated Solutions, to Plaintiffs Joseph and Angela Pizzo. (Proposed Third Am. Compl. ¶ 64.)[4]

3D Systems' arguments for dismissal of the express warranty claim relate to whether the documents cited in the Third Amended Complaint created an express warranty. With respect to the "Standard Terms and Conditions," attached as Exhibit 1 to the Second Amended Complaint, 3D Systems asserts that such terms and conditions only applied to equipment sold by 3D Systems directly to a customer, and therefore purportedly do not apply here, where Plaintiffs purchased the equipment through a third-party. With respect to the on-line brochure, promotional materials, and YouTube video, 3D Systems contends, citing New Jersey law, that the statements in these materials cannot serve as the source for an express warranty claim, because promotional materials are "mere puffery" and are not specific enough to create an express warranty. 3D Systems seeks to limit the express warranty claim only to the written warranty attached as Exhibit 2 to the Second Amended Complaint (hereafter, "Warranty").

Upon review of the documents, the Court agrees with 3D Systems that the only written document that creates an express warranty is the "Warranty" attached as Exhibit 2 to the Second

---

[4] Although these documents, with the exception of the video, are attached as exhibits to the Second Amended Complaint, they are not filed as exhibits to the proposed Third Amended Complaint.

Amended Complaint.[5]  The "Standard Terms and Conditions" attached
as Exhibit 1 to the Second Amended Complaint, by their terms,
apply only to equipment sold by 3D Systems directly to a
customer.  (Second Am. Compl. [Doc. No. 43], Ex. 1) ("These
Standard Terms and Conditions apply to any proposal and
agreement and/or purchase order relating to equipment . . . or
materials . . . sold by 3D Systems, Inc. ('3D Systems') to a
customer ('Customer').").  Plaintiffs allege that they purchased
their printer through Innovated Solutions as an officially
authorized reselling agent for 3D Systems and did not purchase
the printer from 3D Systems directly.  (Proposed Third Am.
Compl. ¶ 9.)  Accordingly, the Court finds no basis to conclude
that the "Standard Terms and Conditions" apply to their purchase
of the printer.[6]

_____

[5] The express warranty claim is also based on samples that were
purportedly sent by 3D Systems to Plaintiff Joseph Pizzo before
he purchased the printer.  (Proposed Third Am. Compl. ¶ 64(G).)
Pursuant to N.J. Stat. Ann. § 12A:2-313(1)(c), "[a]ny sample or
model which is made part of the basis of the bargain creates an
express warranty that the whole of the goods shall conform to
the sample or model."  Although the "Warranty" states that it
"is the only warranty provided for the equipment," 3D Systems
does not argue that the express warranty claim should be
dismissed to the extent that it is based on 3D Systems'
provision of samples to Joseph Pizzo.  Therefore, the Court
denies 3D Systems' request to limit the express warranty claim
solely to the terms of the "Warranty" attached as Exhibit 2 to
the Second Amended Complaint.

[6] Furthermore, even if the "Standard Terms and Conditions" do
apply to Plaintiffs' purchase of the 3D printer at issue in this
case, such terms include a mandatory arbitration clause that

The Court further finds that the statements contained in the promotional materials cited in the proposed Third Amended Complaint do not create an express warranty.  These statements are:

- "'The Projet HD 3000 3-D Production System is a next generation 3-D printer that delivers unmatched part quality with largely unattended operation, ideal for long and high-volume production runs.'" (Proposed Third Am. Compl. ¶ 64(C).)

- "'ProJet's fully automatic job submission and operation insures you won't spend your valuable time calibrating and maintaining this printer. . . . Superior Visijet materials deliver exceptional quality and the unique part support is the easiest and fastest to remove, even from complex, inaccessible internal geometries.'"  (Id. ¶ 64(D).)

- The "Projet 3000 is 'the most robust system in the industry' and the 'highest definition printing product[.]'" (Id. ¶ 64(E).)

The first statement cannot support Plaintiffs' claim because it relates to a different product than the printer purchased by Plaintiffs.  Plaintiffs allege that they purchased a "Projet SD 3000 3D Printer" (id. ¶ 8), whereas the promotional

_____

requires the parties to resolve their disputes before the American Arbitration Association rather than in a court of law. (Second Am. Compl. [Doc. No. 43], Ex. 1 ¶ 14.)

14

materials relate to a "Projet HD 3000" printer.  It appears from Exhibit 4 of the Second Amended Complaint that 3D Systems manufactures various printer models, including both the "Projet SD 3000" and the "Projet HD 3000."  Because Plaintiffs do not allege that they purchased the "Projet HD 3000," their express warranty claim cannot be predicated on statements made with respect this product.

The second and third statements are statements of opinion and cannot create express warranties.  "'A statement can amount to a warranty . . . 'if it could be fairly understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance.''" Avram v. Samsung Elec. Am., Inc., Civ. A. Nos. 2:11-6973, 2:12-976, 2013 WL 3654090, at *8 (D.N.J. July 11, 2013) (internal citations omitted).  However, statements of opinion or commendation cannot create express warranties.  Specifically, N.J. Stat. Ann. § 12A:2-313(2) provides: "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  Indeed, "statements that are nothing more than mere puffery are not considered specific enough to create an express warranty." Snyder, 792 F. Supp. 2d

at 721 (citation omitted).[7]  The statements quoted in the

proposed Third Amended Complaint, the Court finds, are highly

subjective, lack specific, detailed factual assertions, and

amount to non-actionable puffery.  As such, they are not

sufficient to create an express warranty.  See, e.g., In re

Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig., Civ. A.

No. 1:14-3722, 2015 WL 4591236, at *27 n.40 (D.N.J. July 29,

2015) (references to "million-mile durability" were "more akin

to puffery" and were insufficient to create express warranty);

Wojcik v. Borough of Manville, No. A-1627-08T3, 2010 WL 322893,

at *3 (N.J. Super. Ct. App. Div. Jan. 29, 2010) (statements that

helmet was "one of the best" or "great" are opinions, and

statements that helmet was "top rated" and a "top seller" were

statements of value and did not create express warranties).

     Based on the foregoing, the Court will allow Plaintiffs to

file the proposed Third Amended Complaint, but their express

warranty claim in Count IX will be limited to warranties created

by the "Warranty" and the samples that were purportedly provided

to Plaintiff Joseph Pizzo by 3D Systems.

---

[7] "'The distinguishing characteristics of puffery are vague,
highly subjective claims as opposed to specific, detailed
factual assertions.'"  In re Toshiba Am. HD DVD Marketing &
Sales Practice Litig., Civ. A. No. 08-939, 2009 WL 2940081, at
*10 (D.N.J. Sept. 11, 2009) (quoting Haskell v. Time, Inc., 857
F. Supp. 1392, 1399 (E.D. Cal. 1994)).

In so holding, the Court notes that 3D Systems also seeks to limit the damages sought pursuant to the express warranty claim.  3D Systems argues that the "Warranty" limits 3D's liability to bringing the printer into compliance by repairing the defect, and Plaintiffs' request for consequential damages in excess of $650,000 is therefore barred by the terms of the "Warranty."

The New Jersey Uniform Commercial Code provides that a buyer may recover consequential damages for breach of an express warranty.  N.J. Stat. Ann. § 12A:2-715(2).  The parties may nonetheless contract to limit a buyer's damages to repair or replacement of non-conforming goods or parts.  N.J. Stat. Ann. § 12A:2-719(1)(a).  Here, if the breach of express warranty claim was limited to the "Warranty," then such contract would limit Plaintiffs' right to recover consequential damages.  However, the express warranty claim is also based upon the samples sent by 3D Systems to Joseph Pizzo.  Absent any argument by 3D Systems that the remedies provided in the "Warranty" limit Plaintiffs' statutory right to recover consequential damages when additional warranties also support their claim, the Court at this time declines to limit Plaintiffs' damages to repair or replacement of the printer.

17

**B.    Count X -- Magnuson-Moss Warranty Act**

Plaintiffs' amended complaint did not contain a count under the Magnuson-Moss Warranty Act (hereafter, "MMWA"), 15 U.S.C. § 2301 et seq., but Plaintiffs' Second Amended Complaint and proposed Third Amended Complaint now contain a claim under the MMWA.  3D Systems seeks dismissal of this count on the basis that the MMWA does not apply to the printer in this case, because the product is not a "consumer product" as defined under the Act.

15 U.S.C. § 2308(a) provides as follows: "No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product."  As noted by 3D Systems, a "consumer product" is, in turn, defined by the MMWA as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)."  15 U.S.C. § 2301(1).

The Court agrees with 3D Systems that the allegations of the Second Amended Complaint and proposed Third Amended

18

Complaint demonstrate that the Projet SD 3000 printer is not intended to be used for personal, family or household purposes and thus does not fall within the definition of a "consumer product" under the MMWA.  In the proposed Third Amended Complaint, Plaintiffs aver that the printer was supposed to take "formless raw materials and mold[] them into specific mass-produced items which could then be sold as finished products or utilized in the creation of other products or materials." (Proposed Third Am. Compl. ¶ 8.)  In addition, Plaintiffs allege that they "intended to use the machine . . . to perform certain specific tasks which were absolutely critical to RPM [sic] in the conduct of its business, and that a properly functioning machine was an essential component of the operation of said business."  (Proposed Third Am. Compl. ¶ 10.)

    Although Plaintiffs also assert that the printer is "an item of tangible personal property which can normally be used for personal, family or household purposes" (id. ¶ 70), there are no facts to support this characterization.  Indeed, in light of the allegations that the printer was intended to create mass-produced items that could be sold, and that Plaintiffs intended to use the printer in their business, the Court finds that the proposed Third Amended Complaint fails to demonstrate that the printer is a "consumer product" under the MMWA.  Plaintiffs' claim under the MMWA will therefore be dismissed with prejudice.

### C.   Counts VI, VII and VIII -- Implied Warranties of Merchantability, Fitness, and Fitness for a Particular Purpose

### 1. Choice of Law

The Court did not previously undertake a full choice of law analysis with respect to Plaintiffs' claims for breach of implied warranty.  The basis of 3D Systems' prior motion to dismiss such claims was that the implied warranties were disclaimed by the "Warranty," but Plaintiffs insisted that the "Warranty" was not the source of their express warranty claim. The Court invited Defendants to file a renewed motion to dismiss once Plaintiffs submitted a revised pleading that contained sufficient detail for the parties and the Court to ascertain the source of the express warranty claim.  As discussed above, Plaintiffs now concede that their express warranty claim is based in part upon the "Warranty."  Accordingly, 3D Systems again seeks to dismiss the implied warranty claims given the disclaimer contained in the "Warranty."

The Court has considered the law of New Jersey, Pennsylvania and South Carolina and finds no conflict with respect to claims for the implied warranties of merchantability, fitness, or fitness for a particular purpose.  The statutes of all three states regarding these implied warranties are almost identical.  <u>Compare</u> N.J. Stat. Ann. § 12A:2-314, 13 Pa. Cons. Stat. Ann. § 2314, and S.C. Code Ann. § 36-2-314 (implied

20

warranties of merchantability and fitness); N.J. Stat. Ann. §
12A:2-315, 13 Pa. Cons. Stat. Ann. § 2315, and S.C. Code Ann. §
36-2-315 (implied warranty of fitness for particular purpose).
Privity is not required in New Jersey, Pennsylvania or South
Carolina for purposes of asserting an implied warranty claim,
and all three states allow for disclaimer of implied warranties.
See N.J. Stat. Ann. § 12A:2-316(2); 13 Pa. Cons. Stat. Ann. §
2316; S.C. Code Ann. § 36-2-316(2).  Each of these statutes
permits a party to "exclude or modify the implied warranty of
merchantability" by mentioning merchantability in a conspicuous
writing.  Similarly, all three statutes permit a party to
exclude all implied warranties of fitness through a writing with
a conspicuous disclaimer.  In the absence of any apparent
conflict of law, the Court will apply New Jersey law in
considering Plaintiffs' implied warranty claims.

### 2. Analysis

To disclaim an implied warranty of merchantability under
New Jersey law, the disclaimer must mention merchantability and,
if in writing, must be conspicuous.  N.J.S.A. § 12A:2-316(2).
To disclaim an implied warranty of fitness, the disclaimer must
be in writing and must be conspicuous.  Id.

In this case, the "Warranty" contains the following
disclaimer: "THIS WARRANTY IS THE ONLY WARRANTY PROVIDED FOR THE
EQUIPMENT. . . . TO THE MAXIMUM EXTENT PERMITTED BY LAW 3D

21

SYSTEM EXPRESSLY DISCLAIMS ALL OTHER WARRANTIES FOR THE PROJET™ SYSTEM AND EACH OF ITS COMPONENTS, WHETHER THOSE WARRANTIES ARE EXPRESS, IMPLIED OR STATUTORY INCLUDING WARRANTIES OF NON-INFRIGNEMENT, MERCHANTABILITY AND FITNESS FOR PURPOSE." (Second Am. Compl., Ex. 2 ¶ 6.)  The disclaimer is emphasized by capital letters on the first page of a two-page document, and it explicitly mentions merchantability and fitness.  Because the disclaimer is clear, conspicuous and unambiguous, the Court finds that the disclaimer is valid and bars any implied warranty claims against 3D Systems.  Accordingly, Counts VI, VII and VIII of the Third Amended Complaint will be dismissed with prejudice.

**D.   Count XI -- Fraud**

The Court, in the December 29, 2014 Opinion, already concluded that New Jersey law applies to Plaintiffs' fraud claim.  In New Jersey, the five elements of common law fraud are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  See, e.g., Panella v. O'Brien, Civ. A. No. 05-1790, 2006 WL 2466858, at *8 (D.N.J. Aug. 24, 2006).

Under Rule 9(b), a plaintiff must allege in connection with a fraud claim the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation

into a fraud allegation.  <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007).  A plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation.  <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 224 (3d Cir. 2004), <u>cert. denied</u>, 543 U.S. 918, 125 S. Ct. 271, 160 L. Ed. 2d 203 (2004).

The Court previously dismissed Plaintiffs' fraud claim without prejudice, finding that Plaintiffs failed to allege facts with the requisite specificity.  The Court noted that Plaintiffs should be able to identify with some particularity the written materials that contained misrepresentations, the dates and places they received such written materials, and, with respect to the alleged oral misrepresentations, with whom Plaintiffs spoke and the dates on which the representations were made.  The Court also found that Plaintiffs' collectivized allegations that "Defendants" engaged in wrongful conduct, without specifying the nature of each defendant's alleged participation in the fraud, failed to satisfy the heightened pleading requirements of Rule 9(b).  Finally, the Court noted Plaintiffs' failure to allege that Defendants knew that the representations contained in their written materials or verbal communications were false, a required element for a fraud claim under New Jersey law.

In their proposed Third Amended Complaint, Plaintiffs added several factual allegations in an effort to overcome their prior pleading deficiencies.  3D Systems asserts that Plaintiffs' efforts are unavailing, as the proposed fraud claim remains deficient.  According to 3D Systems, the proposed Third Amended Complaint continues to contain collectivized allegations against both 3D Systems and Innovated Solutions, and also fails to allege that Pham -- on behalf of 3D Systems -- made any fraudulent misrepresentations.

To the extent Plaintiffs' fraud claim is based on oral misrepresentations by 3D Systems, the proposed Third Amended Complaint alleges that Pham, with knowledge of Plaintiffs' needs, represented that the Projet SD 3000 printer was the appropriate printer for such needs.  (See, e.g., Proposed Third Am. Compl. ¶¶ 10, 14, 42.)  This representation, according to Plaintiffs, was false because the machine never functioned properly, was not of professional quality, and was not superior to other machines.  (Id. ¶ 85.)  Plaintiffs aver that this statement was knowingly false because Pham was aware that other customers had complaints about the quality and performance of the machine and that 3D Systems had been unable to rectify those defects to the satisfaction of its other customers.  (Id. ¶ 85.) The representation was purportedly made in April or May of 2011 to the individual plaintiffs, with the intent that they rely on

24

the representation to purchase the more costly printer.  (Id. ¶¶ 83, 87.)  Plaintiffs also allege that they relied on the representation in deciding to purchase the Projet SD 3000, and that they were unable to fill customer orders and lost business because the machine did not function properly.  (Id. ¶¶ 17, 18, 87-89.)

Viewing the foregoing allegations in the proposed Third Amended Complaint in a light most favorable to Plaintiffs, the Court finds that the pleading contains sufficient allegations to survive dismissal at this time.  Although the pleading is not a model of clarity, Plaintiffs have added enough factual detail to place 3D Systems on notice of the basis for the fraud claim. See Francis E. Parker Mem. Home, Inc. v. Georgia-Pacific LLC, 945 F. Supp. 2d 543, 558 (D.N.J. 2013) ("'[T]he law does not require specificity just for specificity's sake.  The level of particularity required is sufficient details to put Defendants on notice of the 'precise misconduct with which they are charged.''") (internal citations omitted).  To some extent, the pleading contains collectivized allegations concerning the representations made by Eric Wonderling, on behalf of Innovated Solutions, and Pham on behalf of 3D Systems, but the Court finds that Plaintiffs have also alleged separate conduct by each individual.

In particular, as noted above, the proposed Third Amended Complaint alleges that Pham represented that the Projet SD 3000 was the appropriate printer for Plaintiffs' needs to induce Plaintiffs to purchase this more expensive model, with knowledge that a properly functioning machine was essential to Plaintiffs' business and knowledge that the suggested model was not of superior quality and had defects that could not be rectified. (Proposed Third Am. Compl. ¶¶ 10, 42, 85.)  In light of these allegations, the Court finds that Count XI of the proposed Third Amended Complaint is not futile to the extent it alleges fraudulent oral representations by Pham on behalf of 3D Systems, and this claim will be permitted to proceed at this time.

The common law fraud claim is also based upon alleged written misrepresentations contained in 3D Systems' promotional materials.  The only statements identified with any specificity -- and would therefore satisfy the heightened pleading requirement of Fed. R. Civ. P. 9(b) -- are the five statements quoted in connection with the express warranty claim.  Only one of these statements, however, provides a basis for a fraud claim.  The Court already concluded, as discussed supra, that two of the statements do not apply to Plaintiffs' purchase of the Projet SD 3000, because one (Proposed Third Am. Compl. ¶ 64(A)) only applied to transactions between 3D Systems and a customer directly, and not to purchases through a third-party

26

reseller, and one (id. ¶ 64(C)) applied to a different model printer than the printer purchased by Plaintiffs.  The Court also concluded that two of the statements (id. ¶¶ 65(D), 65(E)) are akin to "puffery."  These statements, therefore, are not misrepresentations of fact and cannot serve as the predicate for a fraud claim.  See Suarez v. Eastern Int'l Coll., 428 N.J. Super. 10, 29, 50 A.3d 75 (N.J. Super. Ct. App. Div. 2012) (noting that fraud claims must be based upon misrepresentation of fact, and expressions of opinion and "puffery" do not satisfy this element of fraud claim).

The only remaining statement that can provide a source for the fraud claim is contained in the "Warranty."  The representations therein affirm the quality of the printer, yet the proposed Third Amended Complaint sets forth facts that demonstrate a lack of quality and durability.  (See Proposed Third Am. Compl. ¶¶ 16, 65-66.)  Plaintiffs allege that Joseph Pizzo viewed the representations on the internet prior to the purchase of the printer in the spring of 2011,[8] and that

---

[8] 3D Systems argues that Plaintiffs fail to identify the date on which the written materials were seen by Joseph Pizzo. Defendants are correct that the complaint is ambiguous in that it states as follows: "Most of these representations, which were viewed by plaintiff Joseph Pizzo in New Jersey, were published on the website of 3D, and in promotional materials posted on youtube and the internet prior to the purchase by plaintiff RMP of the Projet 3000 in the spring of 2011." (Proposed Third Am. Compl. ¶ 82.)  It is unclear from this allegation whether the timeframe, i.e., "spring of 2011," modifies the date on which

Plaintiffs relied on these representations in deciding to
purchase the Projet SD 3000.  (Id. ¶¶ 82, 88.)  Plaintiffs also
allege that such representations were knowingly false in light
of prior customer complaints, and that they lost business
because they were unable to operate the printer.  These
allegations, the Court finds, are sufficient to support
Plaintiffs' fraud claim based on the representations made in the
"Warranty" concerning the quality and durability of the Projet
SD 3000.  As such, the Court finds this count of the complaint
is not futile and will allow such claim to proceed, but will
limit the fraud claim -- to the extent it is based on written
misrepresentations -- to the representations contained in the
"Warranty."

> **E.   Count XII -- Consumer Fraud Act**

The Court also previously conducted a choice of law
analysis with respect to Plaintiffs' claim under the New Jersey
Consumer Fraud Act (hereafter, "NJCFA") and concluded that New
Jersey law applies in this case.  To state a cause of action

---

Joseph Pizzo viewed the "Warranty," or the date on which the
"Warranty" was published on the internet.  The Court, in
deciding a motion to dismiss, must view the allegations in a
light most favorable to Plaintiffs, and therefore concludes that
Joseph Pizzo viewed the "Warranty" in the "spring of 2011."
Indeed, this reading of the complaint comports with Plaintiffs'
allegations that they were in communications with Pham and
Wonderling concerning purchase of the printer in April and May
of 2011.  (Id. ¶ 83.)

under the NJCFA, a plaintiff must allege: "(1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements — defendants' allegedly unlawful behavior and the plaintiff's ascertainable loss." Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, *2 (D.N.J. Jan. 14, 2008) (citation omitted). An "unlawful practice" may be an affirmative act, a knowing omission, or a regulatory violation. See id.

The amended complaint did not contain sufficient facts to support a claim under the NJCFA, which, like a fraud claim, must be pled with specificity. Plaintiffs have now endeavored to rectify their pleading deficiencies by adding factual allegations. 3D Systems contends that Plaintiffs' efforts are unavailing, because Plaintiffs do not allege that 3D Systems made a false statement. This argument addresses the first element of an NJCFA claim, which requires that there was unlawful conduct.

For the reasons discussed above, the Court finds that the proposed Third Amended Complaint sufficiently alleges under a Rule 12(b)(6) standard affirmative acts of misrepresentation by 3D Systems. These representations include statements by Pham that the Projet SD 3000 would be the appropriate model for Plaintiffs' business needs, and a representation as to the quality and durability of the printer as set forth in the

29

"Warranty," with knowledge that a properly functioning machine was critical to Plaintiffs' business and that the Projet SD 3000 was of inferior quality than had been represented to Plaintiffs.[9] Plaintiffs also detail with specificity some of the losses that they suffered because the printer did not function properly, including the $70,000 that they paid for a "worthless" printer, and a contract with a customer, Gamla Model Makers, that RMP purportedly lost because it was unable to fill an order when the Projet SD 3000 failed to function.  (Proposed Third Am. Compl. ¶ 110.)  These allegations, the Court finds, are sufficient at this time to state a claim under the NJCFA.  As such, Plaintiffs will be permitted to file a Third Amended Complaint with a claim against 3D Systems under the NJCFA.

**F.   Undue Delay Does Not Warrant Denial of the Amendment**

Finally, 3D Systems argues that Plaintiffs should not be provided yet another opportunity to amend the complaint, when

---

[9] The NJCFA claim contains an additional allegation of misrepresentation: "On or about April, 2011, Pham informed Joseph Pizzo that the V Flash [presumably, a competitor's three-dimensional printer] should be expected to do 5 out of 10 parts perfectly whereas The Project [sic] can be expected to do 10 out of 10 perfectly."  (Proposed Third Am. Compl. ¶ 100.)  3D Systems argues that Plaintiffs do not allege this statement to be false.  In light of the allegations in the complaint that Pham and 3D Systems knew of other customers' complaints concerning the performance of the Projet SD 3000 and 3D Systems' inability to rectify those defects (see, e.g., id. ¶ 85), the Court construes this allegation as an assertion that Pham's representation was knowingly false.

Plaintiffs have already filed three versions of an initial pleading.  Plaintiffs filed a Second Amended Complaint after the Court dismissed their amended complaint without prejudice.  3D Systems then moved to dismiss the Second Amended Complaint, and in response Plaintiffs now seek leave to file a Third Amended Complaint.  The proposed pleading, as summarized by 3D Systems, contains new allegations in fifteen paragraphs with respect to the role that Pham played in the transaction at issue in this case.  Plaintiffs' counsel has submitted a certification stating that he seeks to file the Third Amended Complaint to clarify the role that Pham played in the underlying transaction.  Counsel represents that Joseph Pizzo is of "advanced age" and has faced some health challenges recently.  Counsel also represents that he became aware of the role of Pham only after he engaged in discussions with counsel for Innovated Solutions.

Where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted.  Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004).  Delay alone is not sufficient to deny a request for leave to amend.  See Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984), cert. denied, 469 U.S. 1122, 105 S. Ct. 806, 83 L. Ed. 2d 799 (1985).  Rather, the moving party "must demonstrate that its delay in seeking to amend is satisfactorily explained."  Harrison Beverage Co. v. Dribeck Importers, Inc.,

133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotations omitted). Courts will deny a request for leave to amend where delay becomes undue, when its accommodation creates an "unwarranted burden on the court[.]" Adams, 739 F.2d at 868.  Courts have also found a lack of "good cause" or an "undue delay" justifying denial of motions to amend where the plaintiff did not act diligently and failed to take advantage of previous opportunities to amend.  See, e.g., Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993); Valentin v. Philadelphia Gas Works, 128 F. App'x 284, 287 (3d Cir. 2005).

This case presents a close call, because Plaintiffs do not adequately explain why they were unable to include at an earlier time the allegations concerning Pham's role in the underlying transaction.  Notably, while Plaintiffs' counsel represents that he only learned of Pham's role recently based upon discussions with counsel for Innovated Solutions, this explanation makes little sense in light of the allegations in the proposed Third Amended Complaint.  Specifically, Plaintiffs aver that Pham made representations directly to them, so Plaintiffs should have known at the time the Second Amended Complaint was filed of Pham's role in the transaction.  It is unclear why such facts only came to light after Plaintiffs' counsel spoke with counsel for Innovated Solutions.

32

Notwithstanding the delay in seeking leave to amend, the Court does not find the delay so undue as to warrant denial of the motion.  Although Plaintiffs fail to explain why they did not advise their counsel of Pham's role sooner, the Court accepts counsel's representation that he only recently learned of Pham's role, and he immediately sought to amend the complaint once he learned such information.  The Court also accepts counsel's representation that Joseph Pizzo is of advanced age and poor health, and this could explain why Pizzo failed to recall Pham's role.  Moreover, this case is still in the pleadings stage, the parties have not yet had an initial conference, and there is no asserted prejudice arising from the delay.  While there is no doubt delay in alleging facts that should have been known to Plaintiffs at the outset, the Court does not find the delay so undue as to warrant denial of the motion to amend, particularly in light of the Third Circuit's preference to decide cases on the merits and the liberal standard for allowing amendments to pleadings.

V.   **CONCLUSION**

Given the unique procedural circumstance presented in this case, where 3D Systems moved for dismissal of the Second Amended Complaint and opposed the filing of a Third Amended Complaint, but Innovated Solutions consents to the filing of the proposed Third Amended Complaint, the Court will allow Plaintiffs to file

the Third Amended Complaint.  However, the Court has considered 3D Systems' arguments with respect to the allegations in the proposed pleading, and the Court finds that some of the claims of the Third Amended Complaint are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

In particular, Counts VI, VII and VIII will be dismissed with prejudice.  To the extent Count IX sets forth a claim against 3D Systems for breach of express warranty, such claim will be limited to the "Warranty" attached as Exhibit 2 to the Second Amended Complaint, as well as the samples that were purportedly sent by 3D Systems to Joseph Pizzo.  Count X will be dismissed with prejudice.  Plaintiffs' fraud claim in Count XI will be limited to the oral representations purportedly made by Pham and the written representations contained in the "Warranty."  Plaintiffs will be directed to file the Third Amended Complaint, with appropriate exhibits attached thereto, within twenty (20) days.

An Order consistent with this Opinion will be entered.


                                       s/ Noel L. Hillman
                                      NOEL L. HILLMAN, U.S.D.J.

Date: August 18, 2015

At Camden, New Jersey